## Plumlee's Administratrix v. Citizen's National Bank of Bowling Green.

(Decided Dec. 17, 1937.)

RODES K. MYERS for appellant.

RODES & WILLOCK for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On February 24, 1930, the appellee and defendant below, Citizen's National Bank of Bowling Green, Ky., was a banking corporation organized under applicable federal statutes, section 5136, U. S. Revised Statutes, as amended by Act Feb. 25, 1927, sec. 2, 44 Stat. 1226, and title 12 U. S. Code Annotated, sec. 24, pp. 18, 19, and doing business at Bowling Green, Ky. It had acquired and owned on that day some realty bonds issued by the "Cumberland Apartments" and which were secured by mortgage on real estate. On the day indicated it sold seven of them, in denominations of $1,000 each, to H. O. Plumlee, a farmer residing in Warren county. After July, 1931, the maker of the bonds began to default in payments of accruing dues, which continued until the filing of this action by plaintiff in the Warren circuit court against the bank on October 6, 1933. Plaintiff by his petition sought to rescind the contract of purchase and to recover from defendant the amount he had paid it for the bonds, with interest thereon, less payments that had been made to him while owner of them, on the ground that when he bought them it was agreed by and between him, and defendant's agent who effected the sale for it, that he should be given such right of rescission at any time he chose to exercise it before full payment of the bonds. It was also alleged that in the transaction of purchase defendant through its agent guaranteed the payment of the bonds and interest

thereon as stipulated in the bonds themselves. He then charged defalcations, and averred that but for such agreements by the bank he would not have made the purchase and that he relied exclusively thereon and possessed no knowledge with reference to the solvency of the bonds. However, he made no charges of fraud nor does the action in any manner seek recovery for tortious action. One paragraph, however, did rely upon the fact that the involved securities had never been approved or registered as is required by our statute known as the "Blue Sky Law," now section 165a-26 of our present (1936 Edition) statutes, nor had defendant qualified thereunder as a salesman thereof, as is required by the same statute in section 165a-33.

After disposing of demurrers, motions to strike, etc., defendant answered, denying the material averments of the petition, followed by a number of affirmative defenses, among which was that plaintiff's asserted cause of action, as based upon failures to comply with the Blue Sky Law, (Ky. Stats. 1936, sec. 165a-23 et seq.) was barred by that statute, because more than two years had elapsed since making the involved sale. It also relied upon its want of authority to enter into the obligations upon which the right of recovery was sought by plaintiff, and which authority was denied to it by an amendment to the section, supra, of the United States Statutes enacted February 25, 1927, and which may be found under citations supra. Other defenses were also interposed; but under our view of the case they may be passed as not now material, and for which reason they will not be stated, much less discussed. The reply of plaintiff, contained, inter alia, a plea of estoppel against defendant's right to rely upon its want of authority to make the agreements relied on in the petition. Following pleadings and motions formed the issues and after plaintiff finished his proof, on the trial before a jury, the court sustained defendant's motion for a peremptory instruction in its favor, followed by a verdict and judgment to that effect, and an order dismissing the petition, to reverse which the personal representative of plaintiff prosecutes this appeal—he having died after the beginning of the action and before the appeal was perfected, followed by proper order of revivor.

A motion has been made to strike the bill of evidence from the record because not filed within the time

prescribed by law, and it was passed to be determined on a consideration of the appeal on its merits. There is considerable confusion in the record relating to the orders of the court in making extensions for the filing of the bill of exceptions by plaintiff, as well as the order actually filing it. As the transcript was originally filed in this court, it did appear that the bills of exceptions and of evidence were filed within allowable time, but on the motion of appellee an additional certification by the clerk has been filed which would indicate the filing was not done in proper time. To enter into a rehash and unraveling of such confusion—followed by the proper determination that should eventually be made of the motion—would require much space and considerable time, to say nothing about the doubtful nature of the issues as so presented. Therefore, since we have concluded to approve the action of the court in directing the verdict in favor of defendant and dismissing plaintiff's petition, we have also concluded to dispose of the case in that manner, and to waive any and all questions relating to the proper filing of the bill of exceptions and bill of evidence, and to treat the case as if they were properly filed.

Plaintiff's counsel in his brief filed in this court cites and relies upon a great number of cases which he insists sustain his client's cause of action as alleged in the petition and amendments thereto. He likewise calls our attention to certain text-writers of apparently the same tenor—none of which is disputed by counsel for defendant. But the error of plaintiff's counsel is evidently entertained because he apparently fails to appreciate and recognize the fact that the federal amendment, supra, to the applicable statutes of the United States, of date February 25, 1927, expressly provided:

"That the business of buying and selling investment securities shall hereafter be limited to buying and selling without recourse marketable obligations evidencing indebtedness of any person * * * or corporation, in the form of bonds, notes and/or debentures, commonly known as investment securities." Section 2, 44 Stat. 1226, 12 U. S. C. A. sec. 24.

The federal statute as so amended was before the Supreme Court of the United States for interpretation in the case of Leo Awotin v. Atlas Exchange National Bank of Chicago, 295 U. S. 209, 55 S. Ct. 674, 676, 79

L. Ed. 1393. The facts in that case (it originating in the state of Illinois) were practically identical with those in this one, except that they were possibly more favorable to plaintiff's cause of action than those presented in the instant one, in that the guarantees and agreements sought to be enforced in that case were in writing, whereas in this one they appear to rest exclusively in parol.

The Appellate Court of the State of Illinois denied plaintiff's right of recovery in that case (see 275 Ill. App. 530), and the State Supreme Court later denied an appeal therefrom, which was followed by a certiorari writ issued by the Supreme Court of the United States for a review of the judgment of the state courts. The writ was granted by the United States Supreme Court (see 294 U. S. 703, 55 S. Ct. 545, 79 L. Ed. 1239). The opinion it later rendered in the case was delivered by Mr. Justice Stone and the interpretative conclusions of the court, as written by him, are clearly and plainly stated in language containing no ambiguity or confusion. It is first held that the words "Without recourse," as contained in the amendment supra, are not limited to their ordinary technical legal significance as applied to an endorser of negotiable papers, but that, on the contrary, when read in their context in the light of the purpose of the proviso in the amendment, they were intended to have, and must be construed as having, "A broader meaning and one more consonant with all the different forms of business to which the proviso relates." The opinion then adds:

"The evil aimed at is concededly a consequence of either an indorsement or guaranty by the bank of the paper which it sells. Both are forms of contingent liability inimical to sound banking and perilous to the interest of depositors and the public. But the liability is the same, in point of substance and of consequences, whether it ensues from technical indorsements of negotiable paper which the bank has sold, or from any other form of contract by which the bank assumes the risk of loss which would otherwise fall on the buyer of securities, or undertakes to insure to the seller the benefit of an increase in value of securities which would otherwise accrue to the bank. See Logan County National Bank v. Townsend, 139 U. S. 67, 11 S. Ct. 496, 35 L. Ed. 107."

Still later in the opinion it was said: "Both the

form and purpose of the statute impel the conclusion that the words were used in a broad and nontechnical sense, as precluding, at least, any form of arrangement or agreement in consequence of which the bank is obligated to save the purchaser harmless from loss incurred by reason of his purchase. See Knass v. Madison & K. State Bank, 354 Ill. 554, 188 N. E. 836; Hoffman v. Sears Community State Bank, 356 Ill. 598, 191 N. E. 280; Lyons v. Fitzpatrick, 52 La. Ann. 697, 699, 27 So. 110; Greene v. First Nat. Bank, 172 Minn. 310, 215 N. W. 213, 60 A. L. R. 814.''

The court then cites the substance of the agreement relied on in that case (identical or practically so as we have seen with the same in this case) and concludes by saying: ''The contract was therefore one which the statute prohibits and for the breach of which the law affords no remedy.'' In disposing of a like plea of estoppel made in that case the court said: ''The petitioner [plaintiff], who was chargeable with knowledge of the prohibition of the statute, may not invoke an estoppel to impose a liability which the statute forbids''—citing cases.

We interpret that opinion as effectually disposing of all questions raised on this appeal, and as precluding us from adopting any other conclusion or interpretation were we so inclined, since it is firmly settled that inferior federal courts and all state courts are bound by the decisions of the United States Supreme Court upon all questions involving construction, interpretation, and application of Federal statutes. It also becomes unnecessary to encumber this opinion with other state opinions in accord with that of the Supreme Court in the case referred to, or to any like opinions of the same tenor delivered by inferior federal courts.

Wherefore, the judgment is affirmed.